[No. 3,964.]

SARAH LARUE, EXECUTRIX, AND A. F. RODGERS,
JAMES LARUE AND LUCAS B. LARUE, EXECUTORS
OF THE LAST WILL AND TESTAMENT OF JAMES B.
LARUE, DECEASED, v. JOSEPH S. FRIEDMAN AND
JACOB BENJAMIN, ADMINISTRATORS OF THE ESTATE
OF JOHN C. McLEMORE, DECEASED.

WHEN COURT OF EQUITY WILL ENJOIN PROCEEDINGS IN PROBATE COURT.—
When the administrator of an estate, and other persons, enter into a
conspiracy, and institute proceedings in a Probate Court to procure the
sale of the property of the estate for their own benefit, upon fraudulent
claims allowed by the administrator, a Court of Equity has jurisdiction
to arrest the proceedings in the Probate Court, by injunction.

IDEM.—In such case, if the proceedings are regular on their face, and the
Probate Court has jurisdiction, the relief granted will be confined to an
injunction, and the order of the Probate Court will not be set aside and
annulled.

APPEAL from the District Court, Third Judicial Dis-
trict, County of Alameda.

The complaint averred that James B. Larue died at the
County of Alameda, on the 7th day of January, 1872, leav-
ing a will wherein the plaintiffs were named executrix, and
executors; that the will was, on the 27th of January, 1872,
admitted to probate, and letters testamentary were issued
to the plaintiffs; that the testator, at the time of his death,
and he and his grantors for more than ten years prior
thereto, had owned and been in the possession of block
148 in the town of Brooklyn, and a tract of one hundred and
sixty acres also in Brooklyn; that one John C. McLemore,
at one time in his life, claimed to have some parol agree-
ment, by which he claimed to have some interest in said
lands, as tenant in common or otherwise; that whatever in-
terest McLemore might have had, had been vested in Larue
long prior to McLemore's death; that McLemore died in
the State of Tennessee, about the month of February, 1864,
intestate, leaving no heirs, except John C. McLemore,
Willie W. McLemore, Mary A. Walker, Robert B. Hays,
and Josephine G. Hays; that, in June, 1870, all of said
heirs executed to one Benjamin L. Jones a full power of

attorney, whereby they authorized him to settle and adjust all matters connected with the estate of said McLemore, deceased, to sell and convey all of said estate, and settle and adjust and pay and discharge all claims against the same; that, by virtue of said power, Jones sold and conveyed to James B. Larue, in his life time, all the right and title of the heirs of McLemore, in and to said property, for which Larue paid him the sum of thirty-five hundred dollars; that Jones, when he made the sale, undertook and promised for himself and the heirs, that if Larue would pay said sum for the title of the heirs whatever it might be; that out of the proceeds of the sale, and such other sales as might be made of the interests of the heirs, he, Jones, for the heirs, would pay all claims against the estate of McLemore, deceased, so that the liens of the creditors of McLemore on the land would be extinguished, and the title of the heirs vest in Larue; that Jones paid certain claims against the estate of McLemore at less than their face, the creditors accepting the sums paid in full satisfaction, and the claims were thereby extinguished; that Jones, after such payment, instead of canceling the claims, with the fraudulent intent of enforcing a second payment, caused the claims to be assigned to himself, and thereafter assigned the same to the defendant, Friedman; that Friedman had full knowledge of all the facts, and confederated with Jones to enforce a second payment from Larue, and that Friedman paid no consideration for the assignment; that in December, 1870, letters of administration were issued out of the Probate Court of San Francisco to defendant Benjamin, who qualified and entered upon the discharge of the duties of his trust; that Benjamin advertised for creditors to present their claims, and the only claims presented were those thus assigned to Friedman, and a certain other claim of Friedman for $28,-308 31, which had no foundation in fact and never existed, and was founded on the following facts: That in 1853, said Friedman purchased from M. G. Vallejo, his interest in certain lands for the agreed price of $13,000, paying $5,000 cash, his promissory note for $1,500, the remaining $6,500

to be paid upon certain contingencies then agreed upon; that Vallejo made a conveyance to Friedman, and it was agreed verbally between Friedman and McLemore, that, if McLemore should refund to Friedman one half said purchase-money, Friedman would convey to him said title to one half said property; that afterwards, in December, 1853, Friedman and McLemore entered into a written agreement, reciting above verbal agreement, and further providing that McLemore would pay said $6,500, after the happening of the contingencies in the first agreement set forth, and after the payment of the said sum of $13,000 by Friedman to Vallejo, and that Friedman would retain the title to the property until the payment by McLemore, and then convey one half to McLemore; that in May, 1854, Friedman gave Vallejo his promissory note for $7,148, payable on the 1st of June, 1855, in satisfaction of said conditional obligation for $6,500, and the conditional obligation was surrendered, and Friedman and McLemore then again agreed that Friedman would convey to McLemore one half of said property upon payment of said note by McLemore, when it fell due; that in June, 1854, Friedman and McLemore made another agreement in writing, whereby McLemore undertook to pay the said note when it should fall due, and Friedman agreed to hold the title to the property, and convey one half thereof to McLemore if McLemore made the payment, but if he did not, Friedman was to sell the property as in case of mortgage, and pursue such other legal remedy as might secure the payment of the note by McLemore; that in August, 1856, the note remaining unpaid, and Friedman retaining what title he had received from Vallejo, reconveyed to Vallejo said title to three fourths of said property, in full payment of said note, and that neither Vallejo nor Friedman ever had or acquired any title to the land, and Friedman never conveyed or tendered any conveyance of any portion of the land to McLemore, and McLemore never promised in writing to purchase any portion of the property.

The complaint then averred that defendant, Benjamin, colluding with Friedman and Jones, to defraud the plaint-

iffs, had allowed said claims as claims against the estate of McLemore, and the allowance had been approved by the Probate Judge; that to procure money to pay the claims, Benjamin · had procured from the Probate Court of San Francisco, an order to sell one third of the parcel of land first above described, and the whole of the other parcel; that under the order, Benjamin, on the 30th of December, 1871, as administrator, sold to Friedman the title of Mc-Lemore in the property, whereby the plaintiffs' title was clouded; that the plaintiffs were not parties to the proceedings in the Probate Court, and had no knowledge of the proceedings until after the sale. There was a prayer that Benjamin be enjoined from making a conveyance, and that the claims be declared fraudulent, and no lien on the property. The defendants demurred to the complaint, and moved to strike out portions of it. The motion was denied, and the demurrer was overruled, and the defendants failing to answer, judgment was rendered against them by default, and they appealed.

The other facts are stated in the opinion.

*Daingerfield & Olney,* for the Appellants.

Probate Courts, in this State, are Superior Courts, and are, by express statutory provision, put on a level with District Courts, so far as intendments respecting their proceedings are concerned. (Statutes 1858, p. 95; 1863, p. 339, Sec. 46; *Hahn* v. *Kelly,* 34 Cal. 414; Herman ·on Estoppel, 134.)

It is now well settled that the judgment of a Superior Court cannot be attacked collaterally for fraud. (*Carpentier* v. *Oakland,* 30 Cal. 439; *Christmas* v. *Russell,* 5 Wall. 304; *Mason* v. *Messenger,* 17 Iowa, 261; Bigelow on Estoppel, 150; 6 Robinson's Practice, 442.)

The attention of the Court and opposite counsel is called to *Boyd* v. *Blankman* (29 Cal. 19). This was an action in equity, brought by the assignee of the heir at law, to enforce a trust against the purchaser at an administrator's sale of real estate, on the ground that the purchaser was the administrator himself, *per interpositam personam,* and

that the order of sale had been procured by his (the administrator's) fraud. We understand the Court to hold, pages 41, 42, that to set aside this order of sale, on the ground that it was procured by fraud, would be to attack it collaterally. (See also *Paine* v. *Stone,* 10 Pick. 75, and *Jennison* v. *Hapgood,* 7 Pick. 1.)

If this is intended as a direct proceeding in equity to set aside the judgment of the Probate Court, we doubt whether, under our judicial system, the District Court has jurisdiction of such an action. (*Hope* v. *Jones,* 24 Cal. 90; *Armory* v. *Armory,* A. L. Reg. Jan. 1873; *Gates* v. *Treat,* 17 Conn. 388; *Bissell* v. *Bissell,* 24 Conn. 241; *Blount* v. *Darrach,* 4 W. C. C. 657; 2 Redf. on Wills, 283.)

The Probate Court is one created by the Constitution, and within its sphere is exclusive in its jurisdiction. (*In Matter of Will of Bowen,* 44 Cal. 689; *Estate of Nerac,* 35 Cal. 392; *Gurnee* v. *Maloney,* 38 Cal. 95; *Irwin* v. *Scriber,* 18 Cal. 499; *Brush* v. *Button,* 36 Conn. 292; *Holladay* v. *Wara,* 19 Penn. St. 492; *Hughes' Appeal,* 56 Penn. St. 179, also at p. 182; *Kellogg* v. *Johnson,* American Law Register, December, 1872, and note of Judge Redfield; *State* v. *McGlynn,* 20 Cal. 233.)

Fifty additional cases could easily be added to this list. But at any rate such an action cannot be maintained if the Probate Court is able to give adequate relief. (*Crowley* v. *Davis,* 37 Cal. 268, and cases cited.) This brings us to our fourth point, which, equally with the first one, we deem conclusive.

The remedy of a party aggrieved by the action of the Probate Court is:

1. To appeal to the Supreme Court; or,

2. If the Probate Court has been imposed upon, and an order obtained by fraud, to petition the Court to vacate its decree, or re-open the case. (*Hope* v. *Jones,* 24 Cal. 90; *Boyd* v. *Blankman,* 29 Cal. 19; *Estate of Lewis,* 39 Cal. 306; *Nolan* v. *Reese,* 32 Cal. 484; *Sanchez* v. *Carriaga,* 31 Cal. 170 and cases cited; *Murdock* v. *DeVries,* 37 Cal. 528; *Boles* v. *Johnston,* 23 Cal. 226; *Armory* v. *Armory,* U. S. C. Court, East. Dist. of Wis., American Law Register, January, 1873; *Jennison* v. *Hapgood,* 7 Pick. 1.)

*Bartlett & Pratt,* for the Respondents.

We could not be heard in the Probate Court, to oppose either the order of sale or the order of confirmation. We are not "persons interested in the estate." (Code Civil Pro., secs. 1,540, 1,553.) We are interested in the estate of Larue only, not in that of McLemore. We do not care how soon the estate of McLemore is sold. We only object to a sale of the Larue estate under an order for the sale of McLemore's estate.

The Probate Court has no jurisdiction to try the questions involved. The real question is, not whether the sale by the administrator was fairly conducted and the price a fair one, but whether the property sold belongs to the estate of McLemore or to the estate of Larue. That issue can only be tried in the District Court. By no possibility could the Probate Court grant all the relief we are entitled to. At best it could only consider a part of the issues involved. If we could have been heard there, and those issues were to be determined in our favor, we should still be obliged to go to the District Court for final relief. Whenever this is the case, the District Court will take jurisdiction at once and settle the whole controversy. (*Clark* v. *Perry,* 5 Cal. 59; *Sandford* v. *Head,* 5 Cal. 298; *Deck* v. *Gerke,* 12 Cal. 433.) These Courts exercise all the powers exercised in the High Courts of Chancery in England. (5 Cal. 297; 30 Cal. 390.) We call the attention of the Court to a few authorities which we think decisive, and fully sustain the jurisdiction of the District Court in this case. The general doctrine is laid down in Willard's Equity, 160, 164; 2 Story Eq. Juris. secs. 875, 887; 3 Sanford Ch. 135; 1 John. Cases, 436.

By the Court, WALLACE, C. J.:

The allegations of the complaint are sufficient to support the decree rendered upon the overruling of the demurrer, and the refusal of the defendants to answer, in so far as it enjoined the proceedings under the order of the Probate Court.

The proceedings had in the Probate Court, by which a sale of McLemore's alleged interest in the premises was ordered, were set on foot for the mere purpose of carrying out a fraud upon the part of the defendants. There was no indebtedness in fact from McLemore to Friedman, by reason of the transactions between the latter and Vallejo. As to the other claims allowed by the administrator in favor of Friedman, the latter is the assignee of Jones without consideration. Jones was agent for the heirs of McLemore, and sold their title or claim of title to Larue, under the agreement between the latter and himself, that the money paid by Larue should go to extinguish the claims now set up as the foundation of the proceedings in the Probate Court, under which the defendants now threaten to sell the land sold to Larue. Instead of extinguishing these claims Jones purchased them in for himself at a heavy discount, assigned them without consideration to the defendant. Friedman and the two latter are now endeavoring to obtain, through the instrumentality of the probate proceedings, a sale of the same land for their own benefit. The jurisdiction of a Court of Equity to arrest such proceedings as constituting a fraud is clear. (*Hager* v. *Shindler*, 27 Cal. 47.)

In one respect, however, the decree, as entered, is erroneous. It adjudges in terms that the order made in the Probate Court be "annulled and set aside." This was no doubt the result of mere inadvertence. The complaint did not ask for relief of that character, and if it had done so, the relief could not have been properly awarded in this action. It is not suggested that there was any want of jurisdiction in the Probate Court to enter the order. The proceedings in that Court would appear to have been regular in all respects. It is only because its enforcement against the premises described in the complaint would, under the circumstances, be inequitable, that the sale to be made thereunder is arrested and the parties enjoined from further proceedings respecting it. But the order itself as entered in the Probate Court remains unaffected by the decree in this cause.

The decree is therefore reversed without costs, and the

Court below directed to modify the decree in the respect indicated. Remittitur forthwith.

Neither Mr. Justice RHODES nor Mr. Justice NILES expressed an opinion.